IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SACKS HOLDINGS, INC.,           )
                                )
        Plaintiff,               )
                                )
        v.                       )        1:23CV1058
                                )
GRIN NATURAL USA LIMITED,        )
et al.,                         )
                                )
        Defendants.              )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiff's Second Motion to Amend the Pleadings (Docket Entry 89). (See Docket Entry dated Sept. 26, 2024.) Because Plaintiff's proposed amendment would unduly prejudice Defendants (A) by significantly expanding the scope and complexity of this case near its conclusion, and (B) by concomitantly requiring the Court to re-open fact discovery, to set a new expert report deadline, and to extend the deadlines for expert discovery and dispositive motions, all of which will delay any resolution of this case (including by trial), the Court will deny the instant Motion.[1]

---

[1] For reasons stated in Deberry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned Magistrate Judge will enter an order, rather than a recommendation. See also Everett v. Prison Health Servs., 412 F. App'x 604, 605 & n.2 (4th Cir. 2011) ("[The plaintiff] moved for leave to amend her complaint . . . to add a state-law claim of medical malpractice . . . . After a hearing, the magistrate judge denied [that] motion. [The plaintiff] timely objected, thereby
(continued...)

## BACKGROUND

Plaintiff commenced this action by filing a Complaint asserting claims:

> [1] for infringement of Plaintiff's federally-registered trademark rights . . ., [2] for common law trademark infringement and unfair competition . . ., [3] for false advertising, [4] for trademark cancellation . . ., and [5] for unfair and deceptive trade practices under the statutory laws of the State of North Carolina, all arising from [] Defendants' unauthorized use of the mark "GRIN" in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendants' oral care products and Defendants' unlawful federal registration of the "GRIN" trademark.

(Docket Entry 1 at 1-2; see also id. at 1, 15-18, 20 (identifying federal law, i.e., Lanham Act, as basis for first four claims); Docket Entry 6 at 1 (confirming service of process occurred on December 22, 2023).) On February 20, 2024, Defendants answered and counter-claimed (see Docket Entry 16; see also Text Order dated Feb. 9, 2024 (extending Defendants' deadline to answer to February 20, 2024)), alleging that Plaintiff engaged in "unauthorized use of the GRIN mark" (Docket Entry 16 at 33), in "violat[ion of] federal and state law" (id.; see also id. at 39-45 (asserting claims under Lanham Act for trademark infringement, unfair competition, and

---

¹(...continued)
preserving the issue for review by the district court. . . . [T]he district court could not modify or set aside any portion of the magistrate judge's order unless the magistrate judge's decision was 'clearly erroneous or contrary to law.' Fed. R. Civ. P. 72(a); 28 U.S.C.A. § 636(b)(1)(A) (2006 & Supp. 2010).").

2

cancellation of two trademark registrations, as well as under North Carolina law for unfair and deceptive trade practices)). Plaintiff thereafter answered Defendants' counterclaims and later (with Defendants' consent) amended that pleading to add more affirmative defenses. (See Docket Entries 23, 44; see also Text Order dated Apr. 5, 2024 (granting Docket Entry 43).)

By agreement of the parties (adopted by the Court), "[d]iscovery [] commence[d] on February 29, 2024" (Docket Entry 22 at 1 (underscoring omitted); see also Text Order dated Mar. 2, 2024 (adopting Docket Entry 22 with three clarifications)), (A) with a deadline of "April 19, 2024, [for the parties] to request leave to . . . amend pleadings" (Docket Entry 22 at 3 (underscoring omitted); see also id. ("After this date, the Court will consider, inter alia, whether the granting of leave would delay trial." (italics omitted))), (B) with "[n]on-expert fact discovery [to] be completed by August 30, 2024, [(C) with] expert discovery [to] be completed by December 6, 202[4]" (id. at 2 (underscoring omitted); see also id. (requiring service of experts' "[i]nitial reports (from party or parties bearing the burden of proof) by September 2, 2024" (underscoring omitted)); Text Order dated Mar. 2, 2024 (clarifying that "deadline for the completion of expert discovery is 12/06/2024 (not 2025)")), and (D) with "[a]ll potentially

3

dispositive motions [] to be filed by January 6, 2025" (Docket Entry 22 at 3 (underscoring omitted)).

On August 21, 2024 (i.e., four months after the deadline for motions for leave to amend pleadings, nine days before the close of fact discovery, and less than two weeks prior to the due date for expert reports), Plaintiff filed the instant Motion "seek[ing] leave to amend its Complaint for the limited purpose of adding claims of (1) trade dress infringement, (2) unfair and deceptive trade practices, and (3) copyright infringement" (Docket Entry 89 at 1), "based on information Plaintiff learned [the preceding] week regarding Defendants' new product packaging" (id.). Plaintiff attached to the instant Motion its proposed Amended Complaint, which (exclusive of attachments) exceeds the length of Plaintiff's Complaint by more than 50% and doubles the number of Plaintiff's claims. (Compare Docket Entry 1 at 1-26, with Docket Entry 89-1 at 2-44; see also Docket Entry 89-1 at 8-10 & 19-24 (setting out 19 new paragraphs of factual allegations regarding trade dress and copyright), 30-38 (asserting five new federal and state claims regarding trade dress- and copyright-related matters).)[2] Defendants have responded in opposition to the instant Motion (see Docket Entry 96) and Plaintiff has replied (see Docket Entry 103).

---

[2] Pin cites to the proposed Amended Complaint refer to the page numbers that appear in the footer appended to that document upon its filing in the CM/ECF system (not any original pagination).

DISCUSSION

Given that Plaintiff filed the instant Motion more than 21 days after <u>both</u> service of the Complaint <u>and</u> Defendants' submission of their answer, as well as that Defendants refused to consent in writing, Plaintiff "may amend its pleading only with . . . the [C]ourt's leave. The [C]ourt should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); <u>see also</u> Fed. R. Civ. P. 15(a)(1) (setting time-limit for amendments of right). This standard affords the Court discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Moreover, the United States Court of Appeals for the Fourth Circuit has construed <u>Foman</u> as "indicat[ing] that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986).

In addition, "the [C]ourt may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).[3] The same standard

---

[3] Factual allegations in Plaintiff's proposed Amended (continued...)

applies to a motion under Federal Rule of Civil Procedure 15(d), as to one under Federal Rule of Civil Procedure 15(a). See Franks v. Ross, 313 F.3d 184, 198 & n.15 (4th Cir. 2002); Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 644 (M.D.N.C. 2004) (recommendation of Dixon, M.J., adopted by Beaty, J.).

The instant Motion fails under the standards of Federal Rule of Civil Procedure 15(a)(2) and (d). To begin, as Defendants noted

---

[3](...continued)
Complaint indicate that Defendants' conduct underlying Plaintiff's trade dress- and copyright-related claims occurred after Plaintiff instituted this action. (See Docket Entry 89-1 at 19-22 (alleging, as support for trade dress-related claims, that (A) "first phase of Defendants' floss pick packaging . . . was introduced on or around September 2019," (B) "second phase of Defendants' floss pick packaging . . . was introduced on or around March 2024, during the pendency of this litigation," (C) Defendants' second phase packaging "deploys bright, monochromatic colors like [Plaintiff's p]ackaging, [] uses these colors to distinguish the type of floss pick, also like [Plaintiff's p]ackaging," "adopts terms . . . to describe the product, similar to [Plaintiff's p]ackaging," and "also notes that Defendants' floss picks are made from recycled plastic, like [Plaintiff's p]ackaging," and (D) Defendants thereafter introduced their "third and latest phase of their floss pick packaging," which "is substantially and confusingly similar to [Plaintiff's p]ackaging," because it "features bright, monochromatic colors and uses these colors to distinguish floss pick type, both like [Plaintiff's p]ackaging," "moved on from canned packaging . . . [to] paper based pouch[es], like [Plaintiff's p]ackaging, and is of a similar size to [Plaintiff's p]ackaging," with "positioning of the elements on [Defendants' third phase of p]ackaging . . . substantially similar to those of [Plaintiff's p]ackaging"), 23 (alleging, as support for copyright-related claims, that "Defendants have copied and used [] Plaintiff's product package design, or a substantial portion thereof, without Plaintiff's authorization, consent, or license," for Defendants' third phase of packaging).)

6

in their opposition to the instant Motion, "if the proposed amendments and new claims are allowed, it would only be fair to [Defendants] to allow a period of discovery to probe the new claims." (Docket Entry 96 at 13-14).) The Court likewise concurs with Defendants' assessment that an extension of fact discovery, in turn, would require "a new round of expert reports[] and a trial schedule[d] to accommodate all of this." (Id. at 2; see also id. at 4 (arguing that "reset[ting] the period of fact discovery[ would] increase costs[ and] spur more motion practice," which would delay "resolution of the case").)

"[A] risk of prejudice, therefore, flows from the competing goals of moving this case to completion in a timely manner, and allowing a fair opportunity for discovery as to the new . . . claims." United States ex. rel. Knight v. Reliant Hospice Inc., Case No. 3:08-3724-CMC, 2011 WL 1321584, at *4 (D.S.C. Apr. 4, 2011) (unpublished). Indeed, if the Court permitted the proffered amendment, it could not reasonably reconcile those competing goals; rather, the Court would have to re-open discovery, to set a new deadline for expert reports, to extend the deadlines for expert discovery and dispositive motions, and to delay the setting of a trial date, which would unduly prejudice Defendants and would depart from the established practice in this district. See Bowden v. Kirkland & Ellis LLP, 432 F. App'x 596, 600 (7th Cir.)

7

(affirming denial of amendment that "would unduly delay disposition of the case by triggering another round of discovery or flurry of motions"), cert. denied, 565 U.S. 879 (2011); Miller v. Administrative Off. of Cts., 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions . . . was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."); Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc., No. 1:03CV537, 2005 WL 6043267, at *3 (M.D.N.C. July 7, 2005) (unpublished) (Dixon, M.J.) (discussing "history of strict adherence to discovery schedules" in this district).[4]

Lastly, "the added allegations, even if bearing some relationship to the original claim[s], are also so clearly distinct from the original claims that they will vastly expand the complexities of proof and risk confusion of the jury . . . [all of which] would be unduly prejudicial . . . ." Knight, 2011 WL 1321584, at *4; see also Reeves v. Ransom, No. 1:10CV56, 2011 WL 4549144, at *12 (M.D.N.C. Sept. 29, 2011) (unpublished) ("The proposed amendments thus would complicate this case and magnify the

---

[4] Consistent with those concerns, the parties agreed that proposed amendments (like this one) filed after the deadline for motions seeking leave to amend would require "the Court [to] consider, inter alia, whether the granting of leave would delay trial." (Docket Entry 22 at 3 (italics omitted).)

risk of confusion in a prejudicial fashion."); <u>Lover v. District of Columbia</u>, 248 F.R.D. 319, 322 (D.D.C. 2008) ("Allowing a plaintiff to amend his complaint may unduly prejudice a defendant if amendment would . . . 'expand the allegations beyond the scope of the initial complaint.' <u>Parish v. Frazier</u>, 195 F.3d 761, 763 (5th Cir. 1999). Prejudice is likely if 'the amended complaint contains "new complex and serious charges" which would undoubtedly require additional discovery . . . .' <u>Ferguson v. Roberts</u>, 11 F.3d 696, 706 (7th Cir. 1993)." (internal brackets omitted)).

For all of the foregoing reasons, the Court will deny the instant Motion.[5]

<u>CONCLUSION</u>

Justice does not require (and just terms do not exist for) allowance of Plaintiff's proposed amendment of the Complaint.

**IT IS THEREFORE ORDERED** that the instant Motion (Docket Entry 89) is **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 11, 2024

---

[5] Because the above-discussed considerations establish prejudice to Defendants warranting denial of the instant Motion, the Court need not address their arguments as to futility of amendment (<u>see</u> Docket Entry 96 at 5-13).