**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

SACKS HOLDINGS, INC.,         )
                                  )
              Plaintiff,      )
                                  )
              v.              )        1:23cv1058
                                  )
GRIN NATURAL USA LIMITED, et al.,  )
                                  )
              Defendants.     )

<u>**MEMORANDUM OPINION AND ORDER**</u>

This case comes before the Court on "Sacks Holdings, Inc.'s Motion to Preclude Adam Levit from Testifying as an Expert Witness for Defendants" (Docket Entry 116 (the "Motion") at 1 (all-cap and bold font omitted)).[1] For the reasons that follow, the Court will grant the Motion as specified herein.[2]

---

1 Docket Entry page citations utilize the CM/ECF footer's pagination.

2 Through various pending motions to seal (<u>see, e.g.</u>, Docket Entries 118, 138), the parties seek to seal information regarding a monthly retainer (<u>see</u> <u>infra</u> pp. 4, 19), conversations with brokers and the informational sources of Levit's opinions (<u>see</u> <u>infra</u> pp. 7, 14), and a reference in a memorandum in support of the Motion to Levit's testimony regarding his offer of compensation (<u>see</u> <u>infra</u> p. 13). Resolution of the Motion necessitates disclosure of this information and denial of sealing. <u>See, e.g.</u>, <u>Smartsky Networks, LLC v. Wireless Sys. Sols. LLC</u>, No. 1:20cv834, 2021 WL 929729, at *6 (M.D.N.C. Mar. 11, 2021) (denying request to seal "documents contain[ing] certain information that is key for the public to understand these proceedings"); <u>In re Zetia (Ezetimibe) Antitrust Litig.</u>, Nos. 2:18md2836, 2:18cv23, 2:18cv39, 2:18cv71, 2018 WL 10471108, at *1 (E.D. Va. Aug. 10, 2018) (denying proposed memoranda redactions that "significantly impact the public's ability to understand the matters before the court").

## BACKGROUND

Asserting various state and federal claims arising from alleged trademark infringement, Sacks Holdings, Inc. (the "Plaintiff") sued Grin Natural USA Limited, Grin Holdings Limited, Grin Natural US Limited, and Grin Natural Products Limited (collectively, the "Defendants") for, inter alia, trademark infringement under the Lanham Act, 15 U.S.C. § 1114. (See generally Docket Entry 1.) Asserting priority rights to the disputed mark, Defendants filed state and federal counterclaims against Plaintiff, including for trademark infringement under the Lanham Act, 15 U.S.C. § 1114. (See generally Docket Entry 16.)

On September 2, 2024, the deadline for disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure (the "Rules") (see Docket Entry 22 at 2; Text Order dated Mar. 2, 2024), Defendants disclosed Adam Levit as a "person[] who may be used at trial to present evidence under Fed[eral] R[ules of] Evid[ence] 702, 703, or 705, and [is] not retained or specially employed to provide expert testimony in the case, and whose duties do not regularly involve giving expert testimony" (Docket Entry 119-1 (the "Disclosure Statement") at 3). (See id. at 4.) According to the Disclosure Statement:

> Mr. Levit is the Chief Executive Officer for Velocity Sales Management. His qualifications include his role at Velocity where for the past nine years he has lead [sic] a team that provides sales management and marketing services across all major channels of distribution, and over 20 years of prior experience in

2

sales, include [sic] holding several leadership roles at the world's largest Natural and Organic company, The Hain Celestial Group.  These positions include Chief Sales Officer, SVP National Sales, General Manager – Snack Foods and VP of Retail Sales.  During his tenure at Hain, he led Sales and Marketing efforts across all major channels of distribution including Natural, Grocery, Club, Mass, Food Service, Military and E-Commerce.  Mr. Levit is expected to testify as to the advantage Plaintiff/Counter Defendant has in placing his [sic] products quickly in the market given his over 30 years of experience and relationships in the sales rep/broker and [sic] how that advantage and Plaintiff/Counter Defendant's strategy to use that advantage to place its GRIN products in wide circulation in retailers throughout the United States once it believed Defendants/Counter Plaintiffs were expanding its [sic] US market presence blocks Defendants/Counter Plaintiffs from sales in that same retailer market given that both products bear a GRIN mark because brokers servicing the retailers and/or the retailers will not want consumer confusion or the risk associated with carrying two brands with the same mark.

(Id. at 3-4.)

On November 7, 2024, Plaintiff deposed Levit.  (See Docket Entry 119-2 at 3.)  As relevant to the Motion, the deposition reflects:

Levit considers himself an expert in "[t]he natural and organic food and personal care space" (id. at 7) and, although he has never before "served as an expert in legal proceedings" (id.), "[he] ha[s]" (id.) "been retained to provide expert testimony in this case" (id.).  As for whether Levit will "[be] compensated for [his] work regarding the testimony that [he] plan[s] on giving" (id. at 10), "[t]here is an offer of compensation depending on how long this goes" (id.; see also id. at 10-11 ("I may choose not to

bill [Defendants[3]] but I have that opportunity.")). As of the deposition on November 7, 2024, Levit had not "billed [Defendants] for any of [his] time related to this litigation," but his arrangement with Defendants provides for an "[h]ourly rate" for such time. (Id. at 11.)

Levit's company, Velocity Sales Management (see id. at 12-13), "currently represents [Defendants]" (id. at 13), a representation that began "[i]n March of 2024" (id.), and for which Defendants pay a monthly retainer (see id. at 16). Levit and his fifteen employees "are essentially a sales team for hire" (id. at 13), so they "function as [Defendants'] sales team and [Levit] as [Defendants'] de facto VP of sales for the U.S." (id.). "Many" of the other fifteen employees at Velocity have also "worked on matters for [Defendants]." (Id.) Notably, Levit "can't speak to what happened prior to [his] engagement with [Defendants]." (Id. at 23; see also id. at 24 (confirming that "[Levit is] not aware of what efforts [Defendants] made to place [their] products in the U.S. before engaging [Levit] and Velocity").) Nevertheless, "it's [his] understanding[ that Defendants] had first use in the market and that — aware of that first use, [Plaintiff] continued to secure

---

3 The provided deposition excerpts generally refer to "Grin Natural" without clarifying which Defendants that term encompasses. (See, e.g., id. at 8-11.) The parties likewise fail to clarify the distinction, if any, between "Grin Natural" and Defendants, largely treating the testimony as referring collectively to Defendants (see Docket Entries 119, 122, 149). This Opinion mirrors that approach.

distribution — attempt to and successfully secure distribution of that mark." (Id. at 22; see also id. at 22-23 ("[I]t's [Levit's] understanding that [Defendants'] sale of product in the United States predates [Plaintiff's].").)[4]

However, Levit "ha[s] no knowledge of when [Plaintiff] made [its] first presentations [to retailers]" (id. at 23) and "can't speak to what [Plaintiff] knew" about Defendants expanding in the United States (id. at 24). Levit has also not "received any documents that are from [Plaintiff]." (Id. at 11.) Moreover, (i) [Levit] ha[s] not" (id. at 8) "done any investigation into [Plaintiff] for this case" (id.), (ii) "[Levit is] not" (id. at 18) "familiar with [Plaintiff's] CEO, Mr. Chodorow" (id. at 17), and (iii) Levit "ha[s] no knowledge of Mr. Chodorow's experience" (id. at 20). Accordingly, Levit "[is not going to testify" that Chodorow "somehow leveraged any sort of experience or relationships to get his product into retailers." (Id. at 24.) Additionally, when asked if he would "testify about [Plaintiff's] or Mr. Chodorow's beliefs about [Defendants'] expansion in the U.S.," Levit responded that he would "not" (id.), "[b]ased on the knowledge [he] ha[s] today" (id.).

When asked about his "familiar[ity] with [Plaintiff]," Levit affirmed only "familiar[ity] with [Plaintiff's] products." (Id. at

<hr>

4  Levit shared this "understanding" when asked about the Disclosure Statement's reference to Plaintiff's alleged "strategy." (Id. at 21-22.)

8.)  When directed to "tell [Plaintiff's counsel] what [he] know[s] about [Plaintiff's] products" (id.), Levit responded that "[he] know[s] that [Plaintiff] ha[s] distribution of a number of floss picks at multiple retailers across the U.S." (id.).  Levit did not recall "see[ing Plaintiff's] Grin product in the marketplace" before he began working with Defendants (id. at 18), but he "purchased a couple of [Plaintiff's] floss picks during [his] due diligence before taking on [Defendants] as a client" (id. at 8).  (See id. at 9 (explaining that Levit "bought a bunch of competitive natural care — natural oral care as — as part of [his] due diligence to refamiliarize [him]self with what was available on the market").)  Those purchases occurred in "November or December of [20]23."  (Id.)  Aside from purchasing those products, Levit "did not" (id. at 18) "do any other research on [Plaintiff]" (id.).

When asked what opinion(s) he "intend[s] to offer at trial in this case," Levit stated: "It is [his] opinion that the lack — that — it is [his] opinion that [Plaintiff's] presence in the market has served as a block to [Defendants] securing retail presence in the market."  (Id. at 12.)  When asked "what facts [he is] relying upon to form that opinion" (id.), Levit said that "[he's] relying on [his] 30 years of work in this space" (id.; see also id. ("Having worked across dozens of different brands across dozens of different retailers, and our lack of success to date, I can trace back to only one key causal and that would be [Plaintiff's] presence in the

6

market.")).  When asked "[w]hat about [Plaintiff's] presence in the market served as a block to [Defendants] securing retail presence in the market," Levit responded:  "The potential confusion between the names."  (Id.)

Although retailers have not provided "any feedback on their declining to purchase [Defendants'] product" (id. at 14; see id. at 14-15), "[i]t is [Levit's] opinion, from multiple presentations on this line, that the decline has come as a direct relation to [Plaintiff's] product being in the market" (id. at 15). Specifically, during "the first quarter of 2024" (Docket Entry 131-8 at 17), Levit spoke with three brokers who "felt" (id. at 15) that Plaintiff's presence in the marketplace would make securing distribution of Defendants' goods "difficult" (id.) and "was going to cause more trouble and confusion than it was potentially worth to them" (id. at 16).  (See id. at 14-17.)  Levit's "opinions are formed on [his] conversations with these [three] brokers [and] the conversations with [his] team on the — either the declines or nonresponse from retailers."  (Id. at 17.)

To be clear, Levit has not "obtained any facts directly from [Defendants] that [he] ha[s] relied upon in order to form [his] opinions in this case."  (Id.)  Further, when asked "[d]id any of the[ retailers] articulate why they were declining [Defendants'] product," Levit responded, "[t]hey did not — the retailers did not."  (Id. at 18.)  He continued:

> It is the opinion of [Levit's] team, and that list
> [Levit] gave [Plaintiff's counsel] probably encompasses
> seven different members of [Levit's] team calling on
> those various retailers, that [Plaintiff's] presence in
> the market is what blocked [them] getting meetings,
> getting acceptance.
>
> And it is also [Levit's] opinion, having had this
> many different directors, [they] call [them]selves people
> directors, have this little success on a product that has
> clearly had success in other markets and is, in [Levit's]
> opinion, a great product. Well designed. Well marketed.
> Well branded. Performs well.
>
> That there is some other factor causing [their] lack
> of success, and [Levit] believe[s] that to be
> [Plaintiff].

(Id.; see also id. at 19 ("[I]n [Levit's] opinion, [Defendants] had a unique offering in the market that would make — in combination with securing brokers that have tight relationships with buyers, would make securing meetings [with retailers] manageable. Nothing's easy today.").)

Levit further confirmed that the Disclosure Statement reflects what he "intend[s] to testify to at trial" (Docket Entry 119-2 at 19), except that "[he] would potentially change 'quickly['] to 'ahead of,' meaning [Plaintiff] having distribution ahead of [Defendants], not necessarily quickly, but ahead of has caused the blockage that [Levit] ha[s] referred to." (Id. at 19-20.) In Levit's view:

> The advantage that [Plaintiff] has is retailers,
> brokers, distributors are not in the business of settling
> trademark issues. Therefore, they will default to
> whatever is already on the shelf.

> And there is no — there's no upside, if you will, to
> a broker or retailer to get involved in that dispute.
> And clearly [Defendants] have a dispute. By bringing in
> another brand with an identical — almost identical mark.
> And creating that confusion on their shelves, confusion
> with their consumers.
>
> And [Levit] — [his] opinion, having done this for 30
> years across multiple retailers and multiple categories,
> is [Plaintiff's] presence on the shelf ahead of
> [Defendants] has created a roadblock within the
> marketplace.

(Id. at 21.) "It's [Levit's] opinion that it would not — that retailers would not want to engage in deciding which side of this dispute they want to be on." (Docket Entry 131-8 at 21.)

## **DISCUSSION**

### **I. Relevant Standards**

Under Rule 26, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A).[5] "[T]his disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). As the United States Court of Appeals for the Fourth Circuit has

_____

5  Federal Rules of Evidence 702, 703, and 705 pertain to expert witness testimony. See Fed. R. Evid. 702 (detailing criteria for expert witness testimony); Fed. R. Evid. 703 (detailing permissible bases for expert's opinion testimony); Fed. R. Evid. 705 (detailing disclosure requirements for facts or data underlying expert opinions).

9

explained, "[h]ybrid witnesses — fact witnesses with expertise that will inform their testimony — do not fall under Rule 26(a)(2)(B)'s purview." <u>Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd.</u>, 31 F.4th 238, 253 (4th Cir. 2022). "But most witnesses do not qualify as hybrid witnesses." <u>Id.</u> (first citing <u>Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.</u>, 849 F.3d 355, 371 (7th Cir. 2017); and then citing <u>Downey v. Bob's Disc. Furniture Holdings, Inc.</u>, 633 F.3d 1, 6 (1st Cir. 2011)).

Moreover, "[i]f a party wants to present opinion evidence through a hybrid witness, it still must disclose: '(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.'" <u>Id.</u> (quoting Fed. R. Civ. P. 26(a)(2)(C)). "Failure to comply with either requirement typically will result in mandatory exclusion." <u>Id.</u> (first citing Fed. R. Civ. P. 37(c)(1); and then citing <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 595-96 (4th Cir. 2003)); <u>see also</u> Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

10

Notably, "[t]he hybrid witness exception applies when testimony is given arising out of personal observations made in the normal course of duty." National R.R. Passenger Corp. v. Railway Express, LLC, 268 F.R.D. 211, 216 (D. Md. 2010) (explaining that "a hybrid witness may relay factual observations and express opinions flowing from those factual observations given their established expertise"). As such, "hybrid fact/expert witnesses . . . must testify from the personal knowledge they gained on the job," Indianapolis Airport Auth., 849 F.3d at 371, or, stated differently, through their "ground-level involvement in the events giving rise to the litigation," Downey, 633 F.3d at 6. "In other words, while hybrid witnesses provide expert opinions, their testimony is based on facts learned or observations made in the normal course of their duties, rather than based on a review of materials supplied to them by someone else." Mayo v. City of Huntington, No. 3:21cv471, 2022 WL 1298742, at *1 (S.D. W. Va. Apr. 29, 2022).

Accordingly, "[t]he district court certainly may preclude [hybrid] witnesses from testifying beyond the scope of facts they learned and opinions they formed during the course of their project duties." Indianapolis Airport Auth., 849 F.3d at 371 (explaining that "[t]h[e] personal knowledge requirement may limit [hybrid witnesses'] testimony"); see also id. at 371 n.6 ("agree[ing] with the district court that [hybrid witness] may not testify about the

11

so-called 'KCE Model' (a computer simulation model) or 'KCE Document' (a diagram plotting out the locations of KCE's inspections)" because such witness "had nothing to do with the creation of the KCE Model" and "he created the KCE Document . . . years after he completed his services on the project, using KCE's inspection reports as his source material," noting that, "[a]t minimum, the district court did not abuse its discretion in excluding [hybrid witness's] testimony about these exhibits, which is more in the nature of retained expert testimony rather than hybrid testimony").

Further, as the Fourth Circuit has emphasized,

> Rule 26 disclosures are often the centerpiece of discovery in litigation that uses expert witnesses. A party that fails to provide these disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case. For this reason, [the Fourth Circuit] give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1).

Wilkins v. Montgomery, 751 F.3d 214, 221 (4th Cir. 2014) (internal quotation marks omitted). Nevertheless:

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing

12

party's explanation for its failure to disclose the evidence.

Southern States, 318 F.3d at 597.

The first four of these "factors — surprise to the opposing party, ability to cure that surprise, disruption of the trial, and importance of the evidence — relate mainly to the harmlessness exception, while the remaining factor — explanation for the nondisclosure — relates primarily to the substantial justification exception." Id. "The burden of establishing these factors lies with the nondisclosing party . . . ." Wilkins, 751 F.3d at 222. In deciding whether to exclude evidence under Rule 37(c), district courts "[are] not *required* to tick through each of the *Southern States* factors." Id. (emphasis in original).

## II. Analysis

### A. Appropriate Classification

Plaintiff asserts that "Levit is not a hybrid witness" because "he 'has the offer' to be compensated for his testimony, which is consistent with experts retained to provide testimony,"[6] and "his proposed testimony extends beyond personal observations made in the normal course of duty." (Docket Entry 119 at 2-3.) As such, Plaintiff maintains, "[Levit] should have provided an expert report pursuant to Rule 26(a)(2)(B), and his failure to do so during

---

6 Defendants do not address Levit's compensation as an expert witness or his admission that "[he] ha[s]" (Docket Entry 119-2 at 7) "been retained to provide expert testimony in this case" (id.). (See Docket Entry 122 at 1-16.)

13

expert discovery was not substantially justified or harmless." (Id. at 9.)  Plaintiff's position possesses merit.

As Levit concedes, "[he] can't speak to what happened prior to [Velocity's] engagement with [Defendants]" (Docket Entry 119-2 at 23; see id. at 23-24), which occurred in March 2024 (see id. at 13).  Moreover, Levit admits that he does not know anything about when Plaintiff began retailer presentations or what Plaintiff believed or knew about Defendants' efforts to expand into the U.S. market.  (See id. at 23-24.)  Indeed, according to Levit, his familiarity with Plaintiff extends no farther than knowing that Plaintiff sells dental products — specifically, floss picks — bearing the Grin mark.  (See id. at 8.)  Levit additionally reports that he (i) conducted no investigation into Plaintiff beyond purchasing some floss picks in late 2023 and (ii) relies on neither documents from Plaintiff nor facts from Defendants for the opinions that he proffers.  (See id. at 8-9, 11, 18; Docket Entry 131-8 at 17.)  Instead, Levit's "opinions are formed on [his] conversations with th[ree] brokers [in the first quarter of 2024 and] the conversations with [his] team on the — either the declines or nonresponse from retailers."  (Docket Entry 131-8 at 17.)

Accordingly, any testimony by Levit regarding, inter alia, (i) Plaintiff's actions and beliefs or (ii) events before Velocity's engagement in March 2024, exceeds the bounds of permissible hybrid witness testimony.  See, e.g., Indianapolis

14

<u>Airport Auth.</u>, 849 F.3d at 371 & n.6.  At most, therefore, the following reflects the outer limits of any hybrid witness testimony from Levit:

> [Since March 2024, Plaintiff's] US market presence [has] block[ed] Defendants[] from sales in that same retailer market given that both products bear a GRIN mark because brokers servicing the retailers and/or the retailers will not want consumer confusion or the risk associated with carrying two brands with the same mark

(Docket Entry 119-1 at 3-4) (the "Hybrid Parameters").[7]

To the extent that Levit seeks to testify beyond that scope (<u>see</u> <u>id.</u>), the Rules obliged him to produce an expert report, <u>see</u> Fed. R. Civ. P. 26(a)(2)(B); <u>see also, e.g.,</u> <u>National R.R.</u>, 268 F.R.D. at 216-18 (recognizing that "a witness can be a hybrid witness as to certain opinions, but a retained expert as to others" and requiring expert reports for proposed witnesses who will "provide expert testimony outside the scope of [the] hybrid exception" (internal quotation marks omitted)).  Levit did not timely produce such report.  (<u>See</u> Docket Entry 119-1 at 3-4.) Nevertheless, Defendants maintain that Levit's "failure to produce a written report" qualifies as "harmless []or substantially justified," and thus that the Court should not "preclude [such] testimony."  (Docket Entry 122 at 8; <u>see</u> <u>id.</u> at 8-14.)  This assertion lacks merit.

---

7 This Opinion does not address the admissibility of Levit's proposed testimony beyond the narrow question of Defendants' compliance with their Rule 26 disclosure obligations.

15

Defendants' harmlessness contention hinges on the notion that, "[t]ogether, the [Disclosure Statement] and [Levit's] deposition provide a complete picture of what would have been opined in Levit's expert report" (id. at 9), forestalling any surprise and preventing any disruptions to the trial schedule. (See id. at 9-12.) Contrary to Defendants' assertions, however, the Disclosure Statement and Levit's deposition do not "provide a complete picture" of Levit's "opinions and [the] factual basis for his testimony" (id. at 9). (See Docket Entry 119-1 at 3-4.) To begin, even beyond the missing word(s), the Disclosure Statement remains confusing and ambiguous. (See id.)

Levit's deposition does not clarify this ambiguity. For instance, in his deposition, Levit confirmed that the Disclosure Statement reflects what he "intend[s] to testify to at trial" (Docket Entry 119-2 at 19), but then he equivocated, saying that "[he] would potentially change 'quickly[']' to 'ahead of,' meaning [Plaintiff] having distribution ahead of [Defendants], not necessarily quickly, but ahead of has caused the blockage that [Levit] ha[s] referred to" (id. at 19-20 (emphasis added)). Thereafter, directly contrary to the Disclosure Statement's position that Plaintiff acted in a certain manner "once it believed Defendants[] were expanding its [sic] US market presence" (Docket Entry 119-1 at 3), Levit stated that he "can't speak to what [Plaintiff] knew" about Defendants' expansion efforts (Docket Entry

119-2 at 24) and "[is] not" (id.) "going to testify about [Plaintiff's] or [its CEO's] beliefs about [Defendants'] expansion in the U.S." (id.). Levit also acknowledged that he "can't speak to what happened prior to [Velocity's] engagement with [Defendants]" (id. at 23), which occurred years after the parties began selling their products in the United States (see, e.g., Docket Entry 25, ¶¶ 18-19, 27-41; Docket Entry 202 at 4).

In sum, the Disclosure Statement and deposition do not "provide a complete picture" of Levit's "opinions and [their] factual basis" (Docket Entry 122 at 9), and thus cannot substitute for the required written report. See Fed. R. Civ. P. 26(a)(2)(B) ("The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; . . . and (vi) a statement of the compensation to be paid for the study and testimony in the case."). Because Levit's opinions and the facts upon which he bases those opinions remain unclear, Plaintiff faces surprise if Levit offers testimony beyond the Hybrid Parameters. "Plaintiff[] cannot cure that surprise without further delay and further discovery, including[, at a minimum, an expert report from Levit]." Gallagher v. Southern Source Packaging, LLC, 568 F. Supp. 2d 624, 632 (E.D.N.C. 2008). By the time the parties finished briefing the Motion, though, the expert

disclosure deadlines had long passed and less than two weeks remained before the dispositive motions' deadline. (See Docket Entry 22 at 2-3; Docket Entry 149 at 12.) Reopening discovery at that juncture would have disrupted the progress of this litigation, to say nothing of the disruption that would occur now, a mere two months before the trial commences (see Docket Entry 230 at 1 (scheduling trial for August 25, 2025)). The first three Southern States factors thus weigh against Defendants. See Southern States, 318 F.3d at 597.

As for the fourth factor, see id., Defendants maintain that "Levit's testimony is important for an aspect of [their] case because his testimony goes to the heart of the injury [that Plaintiff's] infringement inflicted" (Docket Entry 122 at 12). Setting aside the accuracy of that assertion (cf. Docket Entry 149 at 10 (contending that "Levit's proposed testimony has no bearing on Defendants' damages claim . . . [and] does not relate to any recognized factor for assessing trademark infringement in this circuit")), "importance cuts in both directions [in a Rule 37(c) analysis], as admission of important undisclosed evidence prejudices [the opposing party] as well," Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 698 F. Supp. 3d 814, 820 (M.D.N.C. 2023). In any event, the Court (per Chief United States District Judge Catherine C. Eagles) has already "conclude[d] that the evidence, viewed in the light most favorable

18

to [ D]efendants, establishes a priority date in favor of [ P]laintiff" (Docket Entry 202 at 1), thereby defeating Defendants' trademark infringement claim. Thus, the fourth factor, "importance of the evidence," Southern States, 318 F.3d at 597, at best qualifies as neutral. Under Southern States, therefore, Defendants' failure to provide an expert report from Levit does not qualify as harmless.

As for substantial justification, Defendants assert:

> As evidenced by [Defendants'] hybrid disclosure and treatment of Levit as a hybrid witness, [Defendants] ha[ve] reasonably believed Levit is a hybrid witness. Levit's on-the-ground experience working to place [Defendants' products] into retail stores and extensive professional history in the retail industry firmly support [Defendants'] belief. Because the line between hybrid witnesses and retained experts can be difficult to discern in practice, [Defendants'] position has been reasonable.

(Docket Entry 122 at 14.) This contention misses the mark.

First, as Levit explicitly conceded — and Defendants fail to address (see id. at 1-16) — Defendants (or Defendants' counsel (see Docket Entry 119-2 at 10-11)) "retained [Levit] to provide expert testimony in this case" (id. at 7), offering him an "[h]ourly rate" (id. at 11) for such work, distinct from the monthly retainer that Defendants pay for Velocity's services (see id. at 16). Consistent with that retained expert approach, Defendants seek to have Levit opine on matters far beyond "facts learned or observations made in the normal course of [his] duties," Mayo, 2022 WL 1298742, at *1, notwithstanding the limitations on hybrid witness testimony, see,

19

e.g., <u>Indianapolis Airport Auth.</u>, 849 F.3d at 371 & n.6; <u>see also</u> <u>Timpson</u>, 31 F.4th at 253 (explaining that "[h]ybrid witnesses [constitute] <u>fact witnesses</u> with expertise that will inform their testimony" (emphasis added)). (<u>See</u> Docket Entry 119-1 at 3-4; <u>see also</u> Docket Entry 122 at 9 (asserting, in opposition to Motion, that "Levit's opinion is that [Plaintiff] blocked [Defendants'] sales in retail markets by placing their products in those same markets where [Defendants] w[ere] expanding").) Accordingly, Defendants have not established that the failure to provide an expert report from Levit qualifies as substantially justified. <u>See</u> <u>Wilkins</u>, 751 F.3d at 222 (explaining that "[t]he burden of establishing the[ <u>Southern States</u>] factors lies with the nondisclosing party"). The Court (per the undersigned United States Magistrate Judge) will therefore exclude any testimony by Levit beyond the Hybrid Parameters. <u>See</u> Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . ., the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

### B. Hybrid Disclosure

To the extent that Levit qualifies as a hybrid witness, Plaintiff asserts that the Disclosure Statement fails to comply with Rule 26(a)(2)(C). (<u>See, e.g.</u>, Docket Entry 119 at 4, 14-16.)

In particular, Plaintiff notes that, "[a]part from a brief overview of Mr. Levit's background, Defendants provided a single run-on sentence describing what Mr. Levit is expected to testify." (<u>Id.</u> at 15.) Per Plaintiff, "[t]his disclosure lacks a summary of the facts and opinions to which Mr. Levit is expected to testify, which is required by Rule 26(a)(2)(C)(ii)," a situation that "typically results in mandatory exclusion" under Rule 37(c). (<u>Id.</u>)[8]

In response, Defendants maintain:

> Levit was properly disclosed as a hybrid witness in [the Disclosure Statement], which summarized: (1) Levit's opinion that [Plaintiff] blocked [Defendants'] sales in retail markets by placing their products ahead of [Defendants'] on retail shelves and (2) the facts he used to form those opinions — namely that brokers servicing the retailers (and/or the retailers) did not want consumer confusion or the risk associated with carrying two brands with the same mark. As discussed, Levit

---

8  Plaintiff further asserts:

> Levit lacks the relevant factual evidence regarding the purported and assumed subject of his proposed testimony — that is, that retailers are refusing to carry Defendants' GRIN-branded products because of [Plaintiff's] GRIN-branded products in the marketplace. Mr. Levit testified that he has no feedback whatsoever from retailers that show a retailer rejected Defendants' products on that ground. *See* [Docket Entry 119-2] at [14-15]. Without a factual basis to offer an opinion, any such testimony is unreliable and pure conjecture and should be excluded.

(Docket Entry 119 at 15-16.) Resolution of such evidentiary challenges lies beyond the scope of this Opinion. (<u>See also</u> Docket Entry 149 at 6 n.5 (asserting, in Plaintiff's reply memorandum, that "Levit's proposed testimony is also deficient under Fed[eral] R[ule of] Evid[ence] 702 and *Daubert*, but such challenges are better suited to pre-trial motions if the Court denies this Motion").)

> further specified those facts and opinions in his
> deposition, which renders any potential surprise from
> alleged non-disclosure harmless. *See* [Docket Entry 131-
> 8] at [11, 13-16, 18-21].

(Docket Entry 122 at 15.)

Under the circumstances, the combination of the Hybrid Parameters and Levit's deposition renders harmless any Rule 26(a)(C) violation. As Plaintiff correctly notes, the Disclosure Statement provides a confusing and ambiguous description of Levit's proposed testimony, including the factual basis on which he rests any opinions. (See Docket Entry 119 at 15; Docket Entry 119-1 at 3-4.) However, the Hybrid Parameters alleviate much of this confusion, providing a clearer picture of Levit's proposed testimony. (See supra p. 15 ("[Since March 2024, Plaintiff's] US market presence [has] block[ed] Defendants[] from sales in that same retailer market given that both products bear a GRIN mark because brokers servicing the retailers and/or the retailers will not want consumer confusion or the risk associated with carrying two brands with the same mark.").)

Moreover, unlike other disclosures that courts have held deficient, the Hybrid Parameters identify both an opinion and alleged facts upon which the proposed opinion rests. See Timpson, 31 F.4th at 253-54 ("The Timpsons' hybrid witness disclosures failed to satisfy Rule 26(a)(2)(C)(ii). The disclosures included only 'the subject matter on which' the Timpsons expected McPherson, Mullis, and Thomas to testify. Fed. R. Civ. P. 26(a)(2)(C)(i); *see*

22

J.A. 373-75, 378-79. At no point, however, did the disclosures set out 'a summary of the facts and opinions to which' each was expected to testify. Fed. R. Civ. P. 26(a)(2)(C)(ii)."); see, e.g., Timpson by & through Timpson v. Anderson Cnty. Disabilities & Special Needs Bd., No. 20-1163, Docket Entry 112-1, at 397-98 (4th Cir. Jan. 24, 2022) (specifying only that "[Thomas] is expected to testify about matters related to abuse neglect and exploitation as well as programs and services for persons who have intellectual and other mental disabilities and other matters related to this litigation"). Levit also offered additional facts and opinions in his deposition that supplement the information in the Hybrid Parameters, a situation that Defendants contend "renders any potential surprise from alleged non-disclosure harmless." (Docket Entry 122 at 15 (citing, inter alia, Docket Entry 131-8 at 19); see also Docket Entry 131-8 at 19 ("[I]n [Levit's] opinion, [Defendants] had a unique offering in the market that would make — in combination with securing brokers that have tight relationships with buyers, would make securing meetings manageable.").)

The Hybrid Parameters greatly curtail the scope of any testimony that Levit can offer in this matter. Limiting Levit's testimony to the information disclosed in the Hybrid Parameters, as supplemented by his deposition testimony, will reduce any surprise to Plaintiff. Moreover, even setting aside questions regarding the admissibility of such testimony under the Federal Rules of Evidence

23

(see, e.g., Docket Entry 119 at 15-16 (asserting that absence of factual basis for proposed testimony renders it "unreliable and pure conjecture," necessitating its exclusion); Docket Entry 149 at 3-5 (asserting that proposed testimony lacks factual basis and rests on hearsay and conjecture)), testimony under the Hybrid Parameters appears to possess little, if any, relevance for the upcoming trial given that Plaintiff possesses priority rights to the Grin mark (see Docket Entry 202 at 1-5). That consideration, in turn, mitigates the harm from Plaintiff's inability to timely secure a rebuttal expert witness to address Levit's testimony. (Cf. Docket Entry 149 at 5 n.4 (asserting that, "[e]ven if these were proper expert opinions, Mr. Levit's failure to serve a report precluded [Plaintiff] from understanding the scope of his opinions in time to secure a rebuttal expert to testify as to competing explanations for Defendants' market failures").) As such, limiting Levit's testimony to the Hybrid Parameters, as supplemented by the deposition testimony, renders harmless any Rule 26(a)(2)(C) deficiency in the Disclosure Statement.

### C. Attorney's Fees

Plaintiff also requests an award of attorney's fees for the Motion. (See Docket Entry 116 at 1.) Defendants oppose the request for attorney's fees, maintaining that the "[M]otion is without merit," on the theory that "there has been no violation of the discovery rules" and, "if the Court finds that there were, any

24

failure was substantially justified or harmless." (Docket Entry 122 at 16.) As explained above, Levit's proposed testimony exceeds the bounds of permissible hybrid witness testimony, necessitating provision of an expert report for any testimony beyond the Hybrid Parameters. Defendants' failure to provide such report qualifies as neither harmless nor substantially justified. Moreover, the refinement of the Disclosure Statement into the Hybrid Parameters necessitated judicial intervention. The Court will therefore award Plaintiff its reasonable attorney's fees for the Motion. See Fed. R. Civ. P. 37(c)(1)(A) (specifying that, "[i]n addition to or instead of [excluding improperly disclosed witnesses], the [C]ourt, on motion and after giving an opportunity to be heard . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure [to comply with Rule 26(a)]").

<u>**CONCLUSION**</u>

Levit's proposed testimony exceeds the bounds of permissible hybrid witness testimony.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 116) is **GRANTED** as follows: (i) Levit may only testify to the Hybrid Parameters, as supplemented by testimony from his deposition on November 7, 2024, that fits within the Hybrid Parameters; and (ii) Plaintiff is awarded its reasonable attorney's fees for the Motion. On or before June 27, 2025, Plaintiff shall serve Defendants with a notice of the reasonable expenses, including

25

attorney's fees, that Plaintiff incurred in bringing the Motion. On or before July 7, 2025, the parties shall meet and confer in-person or by video-conference about that notice. On or before July 14, 2025, Defendants shall file <u>either</u> a notice stating that the parties have resolved all issues regarding the amount of the reasonable expenses, including attorney's fees, that Defendants must pay Plaintiff <u>or</u> objections (spanning no more than 10 pages exclusive of attachments) to the amount of the reasonable expenses, including attorney's fees, claimed by Plaintiff. On or before July 21, 2025, Plaintiff shall file any response (spanning no more than 10 pages exclusive of attachments) to any such objections.

This 6th day of June, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**