**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SACKS HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23cv1058 |
| | ) | |
| GRIN NATURAL USA LIMITED, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on various motions to seal (Docket Entries 112, 118, 138, 147, 150) (collectively, the "Motions") filed by Sacks Holdings, Inc. (the "Plaintiff") and Grin Natural USA Limited, Grin Holdings Limited, Grin Natural US Limited, Grin Natural Products Limited, and Grin Natural Products Australia PTY (collectively, the "Defendants"). For the reasons that follow, the Court will grant in part and deny in part the Motions.

## BACKGROUND

Through the Motions, the parties seek to seal various memoranda and exhibits submitted in connection with Plaintiff's motions to exclude certain untimely evidence (see Docket Entry 108) (the "Evidence Motion"), strike an untimely expert report (see Docket Entry 110) (the "Expert Report Motion"), and preclude certain testimony (see Docket Entry 116) (the "Hybrid Witness Motion") (collectively, the "Substantive Motions"). (See

*generally* Docket Entries 112, 118, 138, 147, 150.)  Although Plaintiff filed three of the Motions (*see* Docket Entries 112, 118, 147), the Motions largely rest on Defendants' assertion of confidentiality.  (*See, e.g.,* Docket Entry 118 at 1 ("[Plaintiff] submits these materials under seal on the basis of Defendants' claims of confidentiality.").)[1]

Defendants initially sought widespread sealing of large quantities of material, but later abandoned many of those requests.  (*Compare, e.g.,* Docket Entry 134 at 1-2 (generally supporting Plaintiffs' first two sealing motions), *with* Docket Entry 141 at 2 n.2 ("[Defendants] no longer seek[] to maintain as confidential: [various specified materials].").)  Nevertheless, Defendants continue to pursue sealing of a wide range of material (*see, e.g.,* Docket Entry 141 at 2 & n.2), including materials necessary to resolution of the Hybrid Witness Motion (*see* Docket Entry 233 (the "Hybrid Witness Opinion") at 1 n.2).  Complicating matters, the parties filed multiple copies of various documents (*see, e.g.,* Docket Entries 127, 152-1, 199), which at times contained sealing requests that Defendants had already withdrawn (*compare, e.g.,* Docket Entry 150-1 at 8 (redacting deposition testimony), *and*

_____

1  For its part, Plaintiff limited its sealing requests to specific financial details.  (*See, e.g.,* Docket Entry 115-1, ¶ 4 (discussing relevant "financial dollar figures").)  [Docket Entry page citations utilize the CM/ECF footer's pagination.  Unless otherwise specified, capitalized terms use the same terminology as in the opinions resolving the Substantive Motions (*see* Docket Entries 209, 233).]

Docket Entry 199 at 7 (signifying request to seal such testimony), with Docket Entry 141 at 2 n.2 (withdrawing request to seal pertinent testimony)).

## DISCUSSION

### I. Relevant Standards

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "The right of public access to documents or materials filed in a district court derives from two independent sources:  the common law and the First Amendment." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004). "[T]he common law presumption in favor of access attaches to all 'judicial records and documents,'" but "the First Amendment guarantee of access has been extended only to particular judicial records and documents." Stone v. University of Md. Med. Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988) (quoting Nixon, 435 U.S. at 597).

"[The United States Court of Appeals for t]he Fourth Circuit has never clarified which right of access attaches to documents filed with non-dispositive pretrial motions, and thus it is unclear whether the First Amendment right of access also applies to these documents." Syngenta Crop Prot., LLC v. Willowood, LLC, No. 1:15cv274, 2017 WL 11685097, at *2 (M.D.N.C. Sept. 11, 2017) (internal quotation marks omitted).  Moreover, courts diverge in

their treatment of the type of material at issue here. Compare, e.g., Sempowich v. Tactile Sys. Tech., Inc., No. 5:18cv488, 2020 WL 2789792, at *2 (E.D.N.C. May 29, 2020) (applying first-amendment standard to request to seal, inter alia, "documents filed in support of . . . [a] motion to exclude an expert report and testimony"), with Lord Corp. v. S & B Tech. Prods., Inc., No. 5:09cv205, 2012 WL 895947, at *1 (E.D.N.C. Mar. 15, 2012) ("Here, the documents sought to be sealed have been filed in connection with a motion in limine to exclude expert testimony, and not in support of any motions that seek dispositive relief, and therefore the right of access at issue arises under the common law."); see also Hispanic Nat'l L. Enf't Ass'n NCR v. Prince George's Cnty., Civ. Action No. 18-3821, 2021 WL 488641, at *3 (D. Md. Feb. 10, 2021) ("Although it is not entirely clear that all documents discussed in motion *in limine* proceedings have historically been docketed and made available to the public, the [c]ourt agrees that proceedings on a motion *in limine*, in either a criminal or civil case, are functionally a part of the trial itself in that they resolve critical questions of whether particular pieces of evidence will be admitted at trial."). Nevertheless, "[b]ecause the result would be the same under either test, the Court need not determine which right applies." Syngenta, 2017 WL 11685097, at *2.

Under the First Amendment, "access [to judicial records] may be restricted only if closure is necessitated by a compelling

government interest and the denial of access is narrowly tailored to serve that interest." Doe v. Public Citizen, 749 F.3d 246, 266 (4th Cir. 2014) (internal quotation marks omitted). In turn, the common-law "presumption [of access] can be rebutted only by showing that countervailing interests heavily outweigh the public interests in access." Id. (internal quotation marks omitted). In analyzing whether "the public's right of access is outweighed by competing interests" under the common law, relevant factors "include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). Further, in appropriate circumstances, a company's "interest in preserving the confidentiality of its proprietary and trade secret information [can] suffic[e] to overcome both the common law and First Amendment rights of access." Syngenta, 2017 WL 11685097, at *2 (internal quotation marks omitted). Under either standard, however, "[t]he burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003).[2]  Moreover,

---

2  This legal framework also "applies to requests by a party to file a redacted document, i.e., a document sealed in part." Mr. Dee's Inc. v. Inmar, Inc., No. 1:19cv141, 2021 WL 3809256, at *2

5

"the right of public access, whether arising under the First Amendment or the common law, may be abrogated only in unusual circumstances." <u>Public Citizen</u>, 749 F.3d at 266 (internal quotation marks omitted).

As the Fourth Circuit has explained, "public access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary," as it "serves to promote trustworthiness of the judicial process . . . and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." <u>Id.</u> (internal quotation marks omitted); <u>see also id.</u> ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." (internal quotation marks omitted)). Accordingly, as a "[g]eneral[ matter], courts have been hesitant to seal or redact information that will 'play a role in the adjudicative process or adjudicate substantive rights.'" <u>Russe v. United States</u>, No. 1:20cv92, 2022 WL 11965612, at *4 (W.D.N.C. Oct. 20, 2022) (quoting <u>In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D)</u>, 707 F.3d 283, 290 (4th Cir. 2013)); <u>see</u>

_____

(M.D.N.C. Aug. 26, 2021). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." <u>Moussaoui</u>, 65 F. App'x at 888.

6

also, e.g., <u>Scott v. City of Durham</u>, No. 1:20cv558, 2022 WL 767557, at *2 (M.D.N.C. Mar. 14, 2022) (explaining that, in evaluating sealing request, "the court also considers whether the public needs access to the materials to understand a judicial decision").

"When presented with a request to seal judicial records," the Court "must give the public notice of the request to seal and a reasonable opportunity to challenge the request." <u>Washington Post</u>, 386 F.3d at 576. Then, "it must consider less drastic alternatives to sealing." <u>Id.</u> Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." <u>Id.</u>

"Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." <u>Id.</u> This approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," <u>Landmark Commc'ns, Inc. v. Virginia</u>, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," <u>Cochran v. Volvo Grp. N. Am., LLC</u>, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

## II. Analysis

### A. Preliminary Matters

The Motions have appeared on the public docket since December 2024, with no objections filed thereto. (<u>See</u> Docket Entries dated

Dec. 6, 2024, to present.) Thus, all interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," Washington Post, 386 F.3d at 576. Under this Court's Local Rules, however,

> [n]o motion to seal will be granted without a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection, with evidentiary support, including affidavits or declarations, and with citation to any supporting statutes, case law, or other authority.

M.D.N.C. LR 5.4(c). Defendants abandoned many of their confidentiality requests after the Motions' filings. (See, e.g., Docket Entry 141 at 2 n.2 (identifying material Defendants "no longer seek[] to maintain as confidential").)[3] Accordingly, the Court denies the Motions to the extent that they rest on Defendants' since-abandoned confidentiality claims. See Moussaoui, 65 F. App'x at 889 ("The burden of establishing that a particular document should be sealed rests on the party promoting the denial of access.").

Plaintiff, in turn, seeks to maintain under seal specific financial details, primarily its sales and revenue numbers and its expert witness's hourly rate for this matter. (See, e.g., Docket

---

3 More particularly, Defendants (i) narrowed the scope of requested sealing within some documents, (ii) abandoned their request to seal any material in other documents (Docket Entries 114-4, 148, 148-1), and (iii) withdrew their request to entirely seal their expert witness's reports, instead proposing to seal only specific information therein. (See Docket Entry 141 at 2 n.2; Docket Entry 170 at 2 n.2.)

8

Entry 113-6 at 3-20; Docket Entry 142-2 at 5-13.)[4]  This
information qualifies as confidential business information, which
Plaintiff has consistently attempted to shield from public
disclosure and which competitors could use to gain an unfair
competitive advantage. (See Docket Entry 115-1, ¶¶ 4-8; see also
Docket Entries 115, 152.) As refined, the requests to seal (by
redaction) Plaintiff's financial information remain narrowly
tailored to specific financial figures, which possessed little, if
any, relevance to the Court's resolution of the Substantive Motions
(see Docket Entries 209, 233). These circumstances would

_____

        4    Although the highlighting that delineates Plaintiff's
sealing requests encompasses the entirety of footnotes 11 and 12 in
Saitz's New Report (see, e.g., Docket Entry 142-2 at 7 nn.11-12),
Plaintiff does not appear to pursue sealing of the document
citations themselves (see, e.g., Docket Entries 115, 152).
Accordingly, the Court construes Plaintiff's sealing requests for
those footnotes as limited to the financial calculations, mirroring
the approach of footnote 10 (see Docket Entry 142-2 at 6 n.10).
Similarly, the highlighting in the tables in the Rogers Report
encompasses the years and, in some instances, the word "Total"
(Docket Entry 113-6 at 12, 14, 20 (bold font omitted)), but (i) the
report elsewhere publicly identifies the years and the fact that
the tables aggregate the relevant calculations (see id. at 12; see
also id. at 14, 20) and (ii) Plaintiff does not appear to seek
sealing of this information (see, e.g., Docket Entries 115, 152).
As such, the Court construes Plaintiff's sealing requests as
limited to the actual financial figures within the tables.
Additionally, the parties seek to seal the word "approximately" in
Defendants' memoranda recounting Saitz's calculation of Plaintiff's
sales. (See, e.g., Docket Entry 152-1 at 11; Docket Entry 199 at
10.) However, they do not request sealing of that qualifier in
Saitz's underlying Initial Report. (See Docket Entry 142-1 at 7,
10.) Moreover, the qualifier itself does not appear confidential.
The Court thus construes the sealing requests regarding Plaintiff's
financial information as limited to the actual financial figures,
absent any qualifiers.

ordinarily warrant granting the sealing requests without further discussion. (See Docket Entry 204 at 7-8 (granting requests to seal parties' financial information).)

Here, however, Defendants filed an improperly redacted document that mistakenly disclosed one piece of Plaintiff's confidential information. (See Docket Entry 150 at 2.) Per Defendants' subsequent "Additional Motion to Seal" (id. at 1 (all-cap, bold, and underscored font omitted)), Plaintiff promptly notified Defendants of this mistake and Defendants "contacted the Court Clerk's office about this issue to request guidance, permission to swap out the corrected redacted document, and/or provisional sealing of ECF No. 120 pending th[eir additional sealing] motion." (Id. at 2.)[5] Defendants' motion suggests that Defendants understood the Clerk's Office would provisionally seal the improperly redacted document pending resolution of their sealing motion and/or receipt of the properly redacted document. (See id. ("As of the time of this filing, and understandably due to schedules during this time of year, ECF No. 120 has not yet been provisionally sealed. [Defendants] hereby file[] this additional motion to seal ECF No. 120 and to keep under seal that additional phrase. A fresh, redacted copy of the Brief is being filed

_____

5  Promptly substituting the revised redacted document, as Defendants did with their most recent improperly redacted filing (see Docket Entry 224 and associated Docket Entry text), would have better conserved judicial and litigant resources than Defendants' approach of filing yet another motion to seal.

contemporaneously with this Motion as Exhibit A." (bold and underscored font omitted)).) For reasons unknown, no such provisional sealing occurred, leaving the improperly redacted document publicly accessible.

Ordinarily such public disclosure would undermine the parties' sealing requests. See, e.g., Danzy v. Coloplast Corp., No. 1:19cv1017, 2022 WL 1591968, at *5 (M.D.N.C. May 19, 2022) ("When a request to seal pertains to publicly available information, the proponent of that request faces an uphill battle."). However, the improperly redacted information — Defendants' expert's calculation of Plaintiff's sales (see Docket Entry 150 at 2; Docket Entry 150-1 at 11) — patently qualifies as sensitive business information and the actual amount possesses no relevance to the Substantive Motions (see Docket Entries 209, 233), reducing the public interest in access thereto. Moreover, the parties promptly sought to rectify this improper redaction (see Docket Entry 150) and nothing in the myriad filings regarding the Motions indicates that anyone who should not have access to the relevant information has accessed the document. The Court will therefore strike the improperly redacted document and direct the Clerk's Office to substitute the revised redacted document. See, e.g., BBK Tobacco & Foods LLP v. Central Coast Agric. Inc., No. CV-19-5216, 2021 WL 5578864, at *3 (D. Ariz. Nov. 29, 2021) (striking improperly redacted documents that disclosed the defendant's confidential information, explaining

11

that, "because [the plaintiff] has since filed a correctly redacted version of [each document], these earlier filed, improperly redacted versions are needlessly duplicative and will be ordered stricken from the record"); Medley v. Atlantic Exposition Servs., Inc., 550 F. Supp. 3d 170, 203-04 (D.N.J. 2021) (granting motion to seal materials erroneously submitted as exhibit to complaint, explaining that "the documents themselves are pages from an unrelated settlement agreement, and leaving them unsealed on the docket . . . would expose a private agreement between unrelated parties to the general public through no fault or actions of their own, with no corresponding benefit to the public"); James v. ServiceSource, Inc., No. 3:07cv317, 2007 WL 4190794, at *4 (E.D. Va. Nov. 21, 2007) (granting motion to seal materials that, "[b]ecause of a clerical error, . . . were not sealed and are publicly accessible"). The Court further grants the Motions insofar as they seek to seal by redaction Plaintiff's financial information. (See Docket Entry 204 at 7-8.)

**B. Defendants' Sealing Requests**

For their part, Defendants seek to seal information in various memoranda and exhibits, mainly on the grounds that it constitutes sensitive business information. In support of their sealing requests, Defendants offer three declarations from Tara Tan, Chief Executive Officer and co-founder of various Defendants. (See

12

Docket Entry 133, ¶ 1; Docket Entry 143, ¶ 1; Docket Entry 170-1, ¶ 1.) As relevant to the Motions, the declarations state:

> [Tan's] understanding is that the [s]ealing [m]otions [(Docket Entries 112, 118)] concern, in part, maintaining the confidentiality of certain documents containing proprietary business information produced or controlled by [Defendants] in the above-captioned litigation and filed in connection with [Plaintiff's] motions to exclude, strike, and preclude (ECF Nos. 108, 110, 116) (collectively, the "Motions to Exclude").

> Some of the documents and information contained in [Plaintiff's] Motions to Exclude, and accompanying exhibits, concern [Defendants'] financial metrics, such as costs, expenses, profits, and sales representation from a third[-]party sales representative.

> [Defendants] consider[] these documents and information exceedingly sensitive and confidential in nature as it [sic] discloses [Defendants'] confidential financial details as well as [their] marketing and expansion strategies, which remain undisclosed to [their] competitors, clientele, and the general populace.

> [Defendants] ha[ve] invested substantial time, effort, and resources in developing [their] U.S. business, [their] marketing plans, and [their] relationships with sales representatives and brokers. Moreover, [Defendants] ha[ve] extended great efforts to safeguard [their] sensitive information from falling into the hands of competitors.

> Should this information be made public, it could be exploited by [Defendants'] competitors to secure advantages in the marketplace, during contract negotiations, or otherwise inflict harm upon [Defendants].

> Further, the most likely reason others would seek such information would be for the improper purpose of gaining an unfair competitive advantage.

(Docket Entry 143, ¶¶ 4-9 (internal paragraph numbering omitted).)

13

Similarly, Tan declared:

[Defendants] seek[] to maintain the confidentiality of specific portions of proprietary business information in [their] Opposition to [Plaintiff's] Motions to Exclude Untimely Disclosed Evidence, to Strike Ms. Saitz's 'Supplemental' Report, and [Plaintiff's] Motion to Preclude Adam Levit as an Expert Witness ("Grin's Opposition Briefs").

The confidential information contained within [] Grin's Opposition Briefs and accompanying exhibits consists of financial metrics such as revenues, costs, expenses, profits, market expansion collaboration, retail placement strategy, and sales representation from a third[-]party broker.

Disclosure of this type of information could harm [Defendants] because it will allow competitors access to financial data, proprietary data, and commercially sensitive information that could be used to undercut [Defendants] in competitive purchasing and sales situations, as well as in preparing competitive sales, market expansion, and distribution strategies. Further, the most likely reason others would seek such information would be for the improper purpose of gaining an unfair competitive advantage.

[Defendants] ha[ve] invested substantial time, effort, and resources in developing and refining [their] business strategies, marketing plans, and relationships with brokers. Moreover, [Defendants] ha[ve] extended great efforts to safeguard this sensitive information from falling into the hands of competitors.

On information and belief, [Tan is] not aware of any attempts by others to seek [Defendants'] confidential information.

(Docket Entry 133, ¶¶ 4-8 (internal paragraph numbering omitted).)

Finally, according to Tan:

[Her] understanding is that the [s]ealing [m]otion [(Docket Entry 147)] concerns, in part, maintaining the confidentiality of certain documents containing proprietary business information produced or controlled by [Defendants] in the above-captioned litigation and

14

filed in connection with [Plaintiff's] reply in support
of its motion to preclude Adam Levit from testifying as
an expert witness (ECF No. 149) (hereinafter, the "Motion
to Preclude").

Some of the information contained in [Plaintiff's]
Motion to Preclude concerns [Defendants'] sales
representation from a third[-]party sales representative.

[Defendants] consider[] this information exceedingly
sensitive and confidential in nature as it discloses
[Defendants'] sales representation and business expansion
strategy, which remain undisclosed to [their]
competitors, clientele, and the general populace.

[Defendants] ha[ve] invested substantial time,
effort, and resources in developing [their] U.S. business
and [their] relationships with sales representatives and
brokers. Moreover, [Defendants] ha[ve] extended great
efforts to safeguard [their] sensitive information from
falling into the hands of competitors.

Should this information be made public, it could be
exploited by [Defendants'] competitors to secure
advantages in the marketplace, during contract
negotiations, or otherwise inflict harm upon
[Defendants].

Further, the most likely reason others would seek
such information would be for the improper purpose of
gaining an unfair competitive advantage.

(Docket Entry 170-1, ¶¶ 4-9 (internal paragraph numbering
omitted).)

In connection with Defendants' request to seal their expert

witness retention agreement, Defendants also submitted a

declaration from defense counsel. (See Docket Entry 140, ¶ 1.) As

relevant here, that declaration states:

In August 2024, [Defendants] retained Juli Saitz at
FTI Consulting, Inc. ("FTI") as a damages expert in the
above-referenced litigation.

Attached as Exhibit 4 to the Declaration of L. Danielle Toaltoan, dated December 20, 2024 (ECF Nos. 124-08 [sic], 131-08 [sic]) is a true and correct copy of the FTI retention agreement signed in connection with the above-captioned litigation, the terms of which are not publicly disclosed.

[Defendants] ha[ve] consistently maintained this sort of information — the terms by which [they] retain[ their] experts — as confidential.

Disclosure of this type of information could be harmful to [Defendants] because it will allow competitors access to sensitive information concerning [Defendants'] costs related to its retained experts as well as [Defendants'] litigation strategy. Further, the most likely reason other [sic] would seek such information would be for an improper purpose of exploiting [Defendants'] financial information and litigation strategy.

(Docket Entry 140, ¶¶ 3-6 (internal paragraph numbering omitted).)

Defendants' memoranda in support of their sealing requests largely present the same generalized contentions as Tan's declarations. (See Docket Entries 134, 139, 141, 170.) Nevertheless, the Court has reviewed the materials that Defendants seek to seal and concludes that Defendants' financial information, including the costs they pay for various services, warrants sealing.[6] The particulars of this information bear limited

---

6 In an apparent oversight, Defendants omitted the Rogers Report (Docket Entry 113-6) from the list of materials for which they seek sealing (see Docket Entry 134 at 2; Docket Entry 141 at 2). However, Defendants seek to seal references to certain information from that report in memoranda and also seek to seal the original source of certain information quoted in that report. (See Docket Entry 141 at 2 n.2 (requesting sealing for "the portion of the second [sic] full sentence on page 10 already marked for redaction by [Plaintiff]" in its "memorandum of law in support of its [Evidence Motion]," as well as "the portion of the fifth full

relevance to resolution of the Substantive Motions (see Docket Entries 209, 233), but qualify as sensitive, confidential business information that, per Tan, Defendants protect from disclosure, which would harm them (see, e.g., Docket Entry 143, ¶¶ 4-8). Moreover, as with Plaintiff's financial figures, the Court can generally narrowly tailor the restriction on public access by sealing by redaction the specific financial figures found in the memoranda and exhibits.

However, three exhibits consist entirely of financial statements and spreadsheets, which detail, inter alia, Defendants' sales, expenses, and profit and loss calculations for multiple years. (See Docket Entries 113-1, 131-2, 131-3.) Contending that these exhibits contain only confidential information, Defendants ask to maintain the exhibits "entirely under seal" (Docket Entry 141 at 7; accord Docket Entry 139 at 7). The first exhibit, the New Evidence (Docket Entry 113-1), consists entirely of sensitive

_____

sentence on page 9 already marked for redaction by [Plaintiff]" in its "memorandum of law in support of its [Expert Report Motion]," and "propos[ing] redactions . . . to the initial expert report of Ms. Saitz"); see also Docket Entry 113 at 10 (proposing, in Evidence Motion memorandum, redaction of portion of page ten's third full sentence, not counting citation sentences, which recounts information from the Rogers Report); Docket Entry 114 at 9 (proposing, in Expert Report Motion memorandum, redaction of same information in fifth full sentence, not counting citation sentences, on page nine); Docket Entry 113-6 at 10 (quoting from Saitz's Initial Report); Docket Entry 142-1 at 7 (proposing to redact only quoted financial figures in Saitz's Initial Report).) The Court accordingly authorizes sealing by redaction of both Plaintiff's and Defendants' financial figures in the Rogers Report (Docket Entry 113-6).

17

financial information, the specifics of which do not affect the public's understanding of the Substantive Motions; accordingly, it warrants such sealing.

By contrast, the first two pages of Defendants' Sales Spreadsheet (Docket Entry 131-2) and Expense Spreadsheet (Docket Entry 131-3) merely denote the exhibit number, the relevant file name, and the Bates Number associated with the file's production during discovery. (See Docket Entry 131-2 at 1-2; Docket Entry 131-3 at 1-2.) The latter two pieces of information mattered for resolution of the Evidence Motion and appear in the Court's opinion thereon. (See, e.g., Docket Entry 209 at 6, 9-10.) The Court will therefore deny the request to seal the Sales Spreadsheet and Expense Spreadsheet in their entirety; instead, Defendants may seal the portions of those exhibits that contain confidential information: pages 3 through 208 of the Sales Spreadsheet (Docket Entry 131-2) and pages 3 through 42 of the Expense Spreadsheet (Docket Entry 131-3). Defendants additionally submitted a declaration that lists certain categories of costs found in the Expense Spreadsheet. (See Docket Entry 130, ¶ 5.) Defendants may seal by redaction only the quotations from the Expense Spreadsheet — i.e., the specific expense categories — as the remainder of that sentence does not contain confidential information. (See id. ("On June 28, 2024, Grin produced GRIN_00007924, which reflects Grin's expenses and costs related to its U.S. sales, including costs

related to [redacted] and [redacted] in addition to costs concerning [redacted,] among other categories."); <u>see also</u> Docket Entry 123, ¶ 5 (redacting all information after "U.S. sales,").)[7]

Defendants also seek to seal specific portions of Tan's deposition transcript that discuss the contents of the Sales Spreadsheet and Expense Spreadsheet, including information regarding a certain collaboration between Defendants and another entity. (<u>See</u> Docket Entry 113-3 at 20, 25-27 (seeking sealing by redaction of specific questions and answers); <u>see also</u> Docket Entry 141 at 2 n.2 (limiting sealing request).) Defendants further seek to seal discussion of that collaboration in Saitz's deposition transcript and New Report. (<u>See</u> Docket Entry 113-9 at 47; Docket Entry 142-2 at 11-12; <u>see also</u> Docket Entry 141 at 2 n.2.) Tan avers that this material constitutes confidential, sensitive business information, the disclosure of which would harm Defendants. (<u>See</u> Docket Entry 143, ¶¶ 4-8.) The identified information generally appears confidential, except that only the specified name qualifies as confidential in the first marked question on page twenty-five and the first and last marked questions on page twenty-seven of Tan's deposition transcript. (<u>See</u> Docket Entry 113-3 at 25, 27.) Defendants otherwise narrowly tailored their sealing requests, seeking to seal by redaction

---

7 The same conclusion applies to the reproduction of this paragraph in Defendants' opposition to the Evidence Motion. (<u>See</u> Docket Entry 127 at 5-6.)

limited portions of the transcripts and New Report (see Docket
Entry 113-3 at 20, 25-27; Docket Entry 113-9 at 47; Docket Entry
142-2 at 5-6, 10-13), which bear limited relevance to the
Substantive Motions (see Docket Entries 209, 233). Subject to the
foregoing limitation, the Court accordingly grants the request to
seal by redaction the specified material in Tan's and Saitz's
deposition transcripts and the corresponding discussion in Saitz's
New Report.

Separately, Defendants seek to seal certain sentence fragments
that accompany their financial figures. (See Docket Entry 141 at
2 & n.2; see also Docket Entry 113 at 10; Docket Entry 114 at 9;
Docket Entry 119 at 5.) Specifically, Defendants seek to seal the
final six words of the following sentence in Plaintiff's memorandum
in support of its Evidence Motion, and the final nine words of the
same sentence in Plaintiff's memorandum in support of its Expert
Report Motion: "However, Mr. Rogers noted that Ms. Saitz had
likely overstated Defendants' sales by [redacted]." (Docket Entry
113 at 10; Docket Entry 114 at 9; see also Docket Entry 141 at 2
n.2.) Given its context, the amount of the miscalculation
qualifies as confidential. (See Docket Entry 113-6 at 17 ("Ms.
Saitz excluded international sales from Australia but inexplicably
failed to exclude sales from New Zealand. Should it be determined
that those sales do not relate to U.S. sales, it is [Plaintiff's
expert's] opinion that the magnitude of sales as reported by Ms.

20

Saitz is potentially overstated by [redacted] . . . .").)
Defendants have not established, however, that the existence of the
miscalculation in Saitz's Initial Report qualifies as confidential.
(See Docket Entries 133, 143, 170-1.) Defendants also request
sealing of the final clause of the following sentence in
Plaintiff's Hybrid Witness Motion memorandum: "Mr. Levit noted
that his company, Velocity Sales Management ('Velocity'), began
representing [Defendants] in March of 2024, and that [Defendants]
ha[ve] a retainer with Velocity for [redacted]." (Docket Entry 119
at 5; see also Docket Entry 141 at 2 & n.2.)[8] Defendants have
likewise not established the confidentiality of the existence of
this monthly retainer (see Docket Entries 133, 143, 170-1), which

---

8 Plaintiff's memorandum also indicates that Defendants seek
to seal the middle clause of the following sentence: "According to
[Levit's] deposition, he 'has the offer' to be compensated for his
testimony, which is consistent with experts retained to provide
testimony." (Docket Entry 119 at 2-3; see also Docket Entry 141 at
2 & n.2 (endorsing sealing of all marked portions of said
memorandum).) However, a later section of Plaintiff's memorandum
publicly discloses the existence of this offer and specifically
quotes Levit's deposition testimony about this offer (see Docket
Entry 119 at 5), testimony that Defendants do not request the Court
seal (see Docket Entry 119-2 at 10-11). Moreover, this offer of
compensation affected resolution of the Hybrid Witness Motion and
appears in the Hybrid Witness Opinion. (See, e.g., Docket Entry
233 at 1 n.2, 3, 13, 19.) Thus, to the extent that Defendants seek
sealing of this portion of Plaintiff's memorandum, the Court denies
the request. See Washington Post, 386 F.3d at 579 ("[O]nce
announced to the world, the information lost its secret
characteristic." (internal quotation marks omitted)); Russe, 2022
WL 11965612, at *4 ("Generally, courts have been hesitant to seal
or redact information that will play a role in the adjudicative
process or adjudicate substantive rights." (internal quotation
marks omitted)) (collecting cases).

in any event affected resolution of the Hybrid Witness Motion and appears in the Hybrid Witness Opinion (see Docket Entry 233 at 1 n.2, 4, 19). The Court accordingly denies the requests to seal the information — beyond the financial figures involved — regarding Saitz's miscalculation and Defendants' monthly retainer with Velocity. See, e.g., Washington Post, 386 F.3d at 579; Russe, 2022 WL 11965612, at *4.

Defendants similarly seek to seal Levit's deposition transcript's reference to this monthly retainer. (See Docket Entry 119-2 at 16.) For the reasons just discussed, only the specific monetary figure warrants sealing, such that the sentence would read: "Q. Has Grin Natural been paying the [redacted]-a-month retainer?" (id.). Defendants also seek to seal a question and response on the succeeding page of the transcript excerpt. (See id. at 17.) The pertinent exchange lacks relevance to the Substantive Motions. As such, this Court's Local Rules mandate its redaction from the document, rather than maintaining it under seal. See M.D.N.C. LR 5.4(a)(3) ("Sealed documents should not be filed unless necessary for determination of the matter before the Court. If only non-confidential portions of a document are necessary, only those portions should be filed, immaterial portions should be redacted, and no motion to seal should be filed."). The Court thus denies the request to seal this information and directs Defendants to file a properly redacted version of this exhibit. See, e.g.,

22

*Nixon*, 435 U.S. at 598 (observing that "[e]very court has supervisory power over its own records and files"); M.D.N.C. LR 83.4(a)(3) (explaining that, if "a party fails to comply with a [L]ocal [R]ule of this Court, the Court may impose sanctions," including issuing "such orders as are just under the circumstances," such as "an order striking out [court filings] or parts thereof").

Defendants additionally seek to seal portions of Levit's deposition transcript memorializing testimony about, inter alia, his conversations with three brokers regarding potential distribution of Defendants' products, as well as references thereto in one of Plaintiff's memoranda. (*See* Docket Entry 131-8 at 15-17; Docket Entry 149 at 4; *see also* Docket Entry 138 at 2; Docket Entry 170 at 2.) Defendants maintain that this material "includes [their] commercially sensitive business details concerning [their] retail placement strategy, facilitated through a third-party sales representative" and "is exceedingly sensitive as it delineates [their] confidential business expansion strategy, which remain undisclosed to [their] competitors, clientele, and the general populace" (Docket Entry 170 at 4). (*See also, e.g.*, Docket Entry 139 at 4-8; Docket Entry 133, ¶¶ 4-7; Docket Entry 170-1, ¶¶ 4-7.) Yet, Defendants continue to publicly disclose (i) the names of the relevant brokers (*see* Docket Entry 124-8 at 14-15 (identifying relevant brokers as "JOH, or Johnson O'Hare[,] . . . a company in

23

the northeast[, t]he Barcode Group[,] . . . a company that represents . . . brands to Walmart, . . . [a]nd SellEthics," a company "in the southeast")); (ii) Defendants' retail placement strategy (see id. at 14 (explaining that Velocity's "standard procedure is to hire third-party brokers, have [its] client hire third-party brokers which [Velocity] assist[s] them in hiring, engaging, and managing" and that Velocity "ha[s] a list of standard people that [it] work[s] with that [it] ha[s] long-standing relationships with")); and (iii) the fact that these brokers "have declined to represent [Defendants] because of the potential confusion with [Plaintiff]" (id.).

The material that Defendants seek to seal also includes patently nonconfidential testimony. (See, e.g., Docket Entry 131-8 at 16 ("Are Johnson O'Hare, The Barcode Group, and SellEthics, what term would you use for those entities? Brokers? Sales reps? A. Brokers."); 17 ("Have you obtained any facts directly from [Defendants] that you have relied upon in order to form your opinions in this case? A. No. No. My — my opinions are formed on my conversations with these brokers . . . .").) Moreover, the Hybrid Witness Opinion relied upon and disclosed much of the information at issue. (See Docket Entry 233 at 1 n.2, 7, 14.) The Court thus denies Defendants' request to seal this information, except that Defendants can seal by redaction the name of the

24

individual at Johnson O'Hare with whom Levit spoke (see Docket Entry 131-8 at 17).

Finally, Defendants seek to seal in its entirety their retention agreement with FTI. (See Docket Entry 139 at 7 (asserting necessity of sealing such exhibit in its entirety on (mistaken) premise that it "[is a] financial spreadsheet[] that report[s] sensitive sales, costs, and expense information"); see also Docket Entry 124-4 (filing document entirely under seal).) As justification for this request, Defendants maintain that the document reveals their "compensation rates with [their] retained expert, Juli Saitz" (Docket Entry 139 at 2) "and terms relating to [their] retention of experts [for this] action" (id. at 4). Per Defendants, "[d]isclosure of this type of information could be harmful to [Defendants] because it will allow competitors access to sensitive information concerning [Defendants'] costs related to [their] retained experts as well as [their] litigation strategy." (Docket Entry 140, ¶ 6.) However, Saitz's publicly disclosed deposition testimony reveals the nature of her retention in this matter, including the standard terms of her firm's engagement letters (see, e.g., Docket Entry 109-9 at 16-23). Moreover, the relevant exhibit consists of the engagement letter, which appears routine, and fifteen pages of "FTI Standard Terms and Conditions" (Docket Entry 131-4 at 5 (all-cap, bold, and underscored font omitted)). (See id. at 2-19.) Although FTI's standard agreement

terms comprise most of the agreement, Defendants have not shown how such information qualifies as confidential. (<u>See</u> Docket Entry 140, ¶¶ 4-6.) Accordingly, the Court denies the request to seal the FTI retention agreement in its entirety; instead, Defendants may seal by redaction the specific compensation rates and retainer amount listed in the engagement letter.

## C. Final Matters

Under this Court's Local Rules, "[t]he Court may impose sanctions, including attorney's fees, for filing unsupported or overly broad motions to seal, or for making unsupported or overly broad confidentiality designations that are not appropriately narrowed following a request and that necessitate the filing of a motion to seal by another party." M.D.N.C. LR 5.4(a)(4). Defendants' conduct, including their overly broad and unsupported confidentiality assertions, needlessly wasted judicial and litigant resources, cluttered and complicated the docket — creating difficulty for the Court, parties, and public — and contravened this Court's Local Rules. <u>See, e.g.</u>, M.D.N.C. LR 5.4(c)(3) (requiring "a sufficient showing by the party claiming confidentiality as to why sealing is necessary and why less drastic alternatives will not afford adequate protection"); M.D.N.C. LR 5.4 commentary ("As a general rule, parties should keep to a minimum the filing of sealed documents. . . . Motions to seal should be narrow and specific."); <u>see also</u> M.D.N.C. LR 5.4(a)(5) ("[The

26

Court's Local Rules regarding filing documents under seal] are intended to minimize the filing of sealed documents, to protect the public right of access, to ensure the docket is clear so that documents can be found easily, and to allow for review of motions to seal in a way appropriate for the case and that reduces cost, time, and confusion."). Defendants shall therefore bear the burden of filing all necessary conforming documents. See M.D.N.C. LR 83.4(a) (authorizing issuance of "such orders as are just under the circumstances" as sanction for violating Local Rules). In so doing, Defendants shall clearly identify and link each corrected document to all iterations of that document that appear on the docket.

To facilitate that endeavor, the Court summarizes its rulings regarding the various documents that the Motions sought to seal:

| Primary Docket Entry Number | Ruling |
|---|---|
| 113 | Seal by redaction financial figure on page 10 |
| 113-1 | Seal in its entirety |
| 113-3 | Seal by redaction:<br>Page 20: lines 1-6, 20-25<br>Page 25: lines 11-25<br>Page 26: line 1<br>Page 27: lines 8-16<br>Page 27: entity's name in lines 6, 17 |
| 113-5 | Seal by redaction financial figures (see, e.g., Docket Entry 142-1) |
| 113-6 | Seal by redaction financial figures |

| 113-9 | Seal by redaction financial figures and, as marked, collaboration discussion (see Docket Entry 142-2) |
| 114 | Seal by redaction financial figure on page 9 |
| 114-4 | Unseal |
| 119 | Seal by redaction amount of retainer on page 5 |
| 119-2 | Seal by redaction amount of retainer on page 16 Redact lines 15-20 on page 17 |
| 120 | Replace with Docket Entry 150-1 |
| 127 | Seal by redaction financial figures on pages 10-12 and named expense categories on page 6 |
| 128 | Seal by redaction financial figures on pages 4-6 |
| 130 | Seal by redaction named expense categories in paragraph 5 |
| 131-2 | Unseal pages 1-2; seal pages 3-208 |
| 131-3 | Unseal pages 1-2; seal pages 3-42 |
| 131-4 | Seal by redaction compensation rates and retainer amount on pages 2-3 |
| 131-8 | Seal by redaction individual's name in lines 23-24 on page 17 |
| 148 | Unseal |
| 148-1 | Unseal |
| 149 | Unseal |

Finally, the parties originally sought permanent sealing of all affected materials. (See, e.g., Docket Entry 115 at 2, 5, 7 (asking Court to "keep" and "maintain" Plaintiff's confidential information under seal, without specifying end date for such sealing); Docket Entry 139 at 8-9 (requesting permanent sealing of Defendants' information).) However, as this Court (per Chief

28

United States District Judge Catherine C. Eagles) explained when ruling on yet more sealing motions in this matter:

> Because confidential business information is typically dated after a few years, permanent sealing is not appropriate. As the parties agreed at a recent hearing, sealing this information for 10 years will more than adequately protect their interests.
>
> Should the matter go to trial, the public interest in this information will be higher. Granting these [M]otions does not necessarily mean that trial exhibits or testimony will be sealed. And if this information becomes public at trial, the Court will lift the seal on this information earlier.

(Docket Entry 204 at 9-10.)

## CONCLUSION

The parties have justified sealing only certain information filed in support of the Substantive Motions.

**IT IS THEREFORE ORDERED** that the Motions (Docket Entries 112, 118, 138, 147, 150) are **GRANTED IN PART AND DENIED IN PART** as specified herein.

**IT IS FURTHER ORDERED** that, on or before July 15, 2025, Defendants shall file public versions of Docket Entries 113, 113-3, 113-5, 113-6, 113-9, 114, 114-4, 119, 119-2, 127, 128, 130, 131-2, 131-3, 131-4, and 131-8 that conform with this Opinion.[9]

---

9 The public version of the New Evidence (Docket Entry 113-1) that appears on the docket comports with the rulings herein (see Docket Entry 109-1), obviating the need for further filings related thereto. However, this Court's CM/ECF system applies the same sealing classification to all material filed at a Docket Entry and thus cannot maintain Docket Entry 114 under seal while unsealing Docket Entry 114-4. Accordingly, Defendants must file an unsealed version of Docket Entry 114-4.

**IT IS FURTHER ORDERED** that the Clerk shall unseal (i) Docket Entries 148, 148-1, and 149 upon entry of this Opinion and (ii), subject to further order of the Court, Docket Entries 113, 113-1, 113-3, 113-5, 113-6, 113-9, 114, 114-4, 119, 119-2, 127, 128, 130, 131-2, 131-3, 131-4, 131-8, 152-1, 152-2, 199, 199-1, 199-2, 199-3, and 199-4 on January 2, 2035.

**IT IS FURTHER ORDERED** that the Clerk shall promptly replace the improperly redacted document at Docket Entry 120 with the revised redacted document currently filed as Docket Entry 150-1.

This 8th day of July, 2025.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

30